UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | | |
|---|---|---|
| **MANIILAQ ASSOCIATION,** | ) | |
| **Plaintiff,** | ) | **2:09-cv-00010-JWS** |
| **vs.** | ) | **ORDER AND OPINION** |
| **INTERNATIONAL DISASTER SERVICES, LLC,** | ) | **[Re: Motion at Docket 5]** |
| **Defendant.** | ) | |

## I. MOTION PRESENTED

At docket 5, defendant International Disaster Services, LLC moves this court for an order dismissing this action for improper venue pursuant to 28 U.S.C. § 1406(a) or, in the alternative, to change the venue of this proceeding from Alaska to the Middle District of Georgia pursuant to 28 U.S.C. § 1404(a). IDS also claims that service of Maniilaq's summons and complaint was ineffective.[1] At docket 15, plaintiff Maniilaq Association opposes the motion. IDS replies at docket 19. Oral argument was not requested, and would not assist the court.

## II. BACKGROUND

Maniilaq, a non-profit Alaska corporation, provides health care and other services in and around Northwest Alaska, with headquarters in Kotzebue, Alaska.[2] IDS is a

[1]Maniilaq has since perfected service, rendering this aspect of IDS's motion moot. *See* Docket 15-10 at 2.

[2]Docket 1 ¶ 1.

limited liability company, which builds and sells modular units and building complexes, with its principal place of business in Macon, Georgia.[3] On or about June 10, 2009, Maniilaq entered into a contract with IDS for the construction of a 38-suite apartment building in Kotzebue, Alaska.[4] On or about July 30, 2009, Maniilaq entered into a second contract with IDS for the construction of a five-unit medical clinic building in Kivalina, Alaska.[5] Both contracts were negotiated by e-mail and telephone, but they were executed by Maniilaq in its Kotzebue offices.[6] Both contracts specifically state that "[t]his agreement shall be governed by the laws of Georgia," although neither contract dictates that disputes would be resolved in Georgia courts or otherwise contains a forum selection clause.[7] Maniilaq alleges generally that IDS has failed to perform its construction obligations under either contract, and has failed to provide adequate assurances to Maniilaq that it would complete the work on the Kotzebue apartment building or the Kivalina clinic.[8]

The pending motion requires the court to determine whether Alaska is an improper forum requiring dismissal or, in the alternative, whether the interests of justice require a transfer to the Middle District of Georgia. IDS argues that, because the parties selected Georgia law to govern their contracts, Georgia is the proper forum for resolution of their dispute.[9] Indeed, IDS claims that it was the intention of the parties to litigate any disputes in Georgia, citing the affidavit of its president, Michael Garrison, who states that Maniilaq was advised that the contract would have to be enforceable in

---

[3]*Id.* ¶ 2.

[4]*Id.* ¶ 5.

[5]*Id.* ¶ 7.

[6]Docket 15-4 at 3; docket 21 ¶ 8.

[7]Docket 6 at 3. IDS claims, however, that it has always understood that Georgia would be the chosen forum for disputes arising under the agreements. *Id.*

[8]Docket 1 ¶¶ 9-11.

[9]Docket 6 at 6-7.

Georgia and that recourse for disputes would be resolved in Georgia courts."[10] In any event, IDS argues that a discretionary change of venue is appropriate because all of the potential witnesses who could speak to the assembly, shipment, and installation of IDS's product are located in Georgia.[11] Maniilaq responds that, because the agreement contains no forum selection clause, IDS is prohibited under the parol evidence rule from arguing about the parties' understanding regarding forum selection.[12] Moreover, Maniilaq argues that most of the events giving rise to the parties' dispute took place in Alaska, and many of its witnesses - which outnumber IDS's witnesses - are located in Alaska.[13] The court considers the parties' arguments below.

## III. DISCUSSION

Because the parties appear to agree that this court has specific personal jurisdiction over IDS,[14] the court analyzes Maniilaq's motion to transfer venue under § 1404(a).[15] Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Ninth Circuit's decision in *Jones v. GNC Franchising, Inc.* provides the relevant analysis.[16] "Under § 1404(a), the district court has discretion to adjudicate motions for transfer according to an

---

[10]*Id.*, Exhibit 1 ¶ 7.

[11]*Id.* at 8-10.

[12]Docket 15 at 13-17.

[13]*Id.* IDS counters that Maniilaq does "an exceptional job of involving the entire communities of Kivalina and Kotzebue, and the entire board, association of officers, and employees of Maniilaq Association in these projects and relating them to this litigation, not to mention everyone who has attended a meeting related to the project." Docket 19 at 5.

[14]Docket 19 at 5 ("IDS does not dispute that Maniilaq would typically have had the right to file this case in Federal District Court in Alaska.").

[15]Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, 15 Federal Practice & Procedure: Jurisdiction § 3842 (3d ed. 2007); *see also* Wright, Miller & Cooper, 14D Federal Practice & Procedure: Jurisdiction § 3827 (3d ed. 2007).

[16]211 F.3d 495 (9th Cir. 2000).

individualized, case-by-case consideration of convenience and fairness."[17] "A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case."[18] For example, the court may consider:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.[19]

"Additionally, the presence of a forum selection clause is a 'significant factor' in the court's § 1404(a) analysis," as well as "the relevant public policy of the forum state."[20]

**Location of Negotiation and Execution**. The parties negotiated and executed the two contracts over the telephone and via e-mail from their respective offices in Alaska and Georgia. Therefore, this factor does not favor one venue over another.

**Governing Law**. Both contracts state that any disputes should be resolved according to Georgia law, and the parties agree that Georgia law applies to the substantive issues. Maniilaq argues that because the contracts "incorporate Alaska building codes, and provide that national and international uniform building standards apply,"[21] this factor should favor venue in Alaska. The court disagrees. Because the choice of law provision calls for Georgia law to apply, and because Georgia law will apply to most of the legal issues in the case,[22] the court concludes that a Georgia court

---

[17]*Id.* at 498.

[18]*Id.*

[19]*Id.* at 498-99.

[20]*Id.* at 499.

[21]Docket 15 at 13.

[22]Indeed, each claim in Maniilaq's complaint arises under either Georgia common law or the Uniform Commercial Code. *See* Docket 1.

will be better suited to adjudicating Maniilaq's claims. The court is also confident that a Georgia federal court will be perfectly able to address Alaska building codes and Arctic climatic conditions, should those issues arise. Thus, this factor weighs in favor of venue transfer to the Middle District of Georgia.

**Plaintiff's Choice of Forum**. Ordinarily, "great weight" is accorded to the plaintiff's choice of forum.[23] Maniilaq claims that its selection of Nome was made in good faith, while IDS claims that Maniilaq's decision ignored the parties' mutual understanding that any disputes would be litigated in Georgia. Maniilaq argues that, under Georgia's parol evidence statute, IDS's statement of understanding "is inadmissible to add to, take from, or vary a written contract" in the absence of a contractual ambiguity.[24] "[I]f there is an ambiguity, latent or patent, it may be explained; so, if only part of a contract is reduced to writing . . . and it is manifest that the writing was not intended to speak the whole contract, then parol evidence is admissible."[25] Here, based on an examination of the contracts, there appears to be no ambiguity, and there is no indication that the parties intended to include a forum selection clause.[26] Therefore, the court concludes that Mr. Garrison's statements regarding the parties' intent are inadmissible, Maniilaq's decision to file suit in Alaska was in good faith, and this factor favors venue in Alaska.

**Defendant's Contacts with the Chosen Forum**. The parties agree that IDS has contacts with Alaska, which relate to the contracts at issue. Specifically, IDS sent a team of employees to Alaska to assemble and install the apartment complex and medical clinic. Moreover, this dispute appears to arise out of IDS's alleged failure to perform while in Alaska (e.g., their alleged failure to connect the buildings to water and sewer lines), and not an alleged failure to manufacture the building materials properly in

---

[23]*See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).

[24]Ga. Code Ann. § 13-2-2(1).

[25]*Id.*

[26]However, even the presence of a forum selection clause is not dispositive of a § 1404(a) motion to transfer. *See Jones*, 211 F.3d at 499 n.20 (citation omitted).

Georgia. Therefore, because the focus of the dispute involves events occurring in Alaska, this factor militates in favor of venue in Alaska.

**Differences in Cost and Access to Sources of Proof**. As an initial matter, all building materials forming the subject of this litigation are located in Kotzebue and Kivalina. Therefore, it is clear that access to physical evidence may be obtained in Alaska, but not in Georgia. The court must also consider the number and location of witnesses on each side, and the importance of the witnesses to the case.[27] Maniilaq claims that it expects 17 of its personnel, as well as 47 non-party Alaskans to provide testimony in this matter. IDS claims that 14 of its Georgia employees, including Mr. Garrison and the team of individuals who traveled to Alaska for the project as well as one non-party architect from Tennessee, will be called upon to testify. IDS argues that Maniilaq has artificially inflated the number of its witnesses in order to create the perception that the costs of litigating in Georgia would be greater than IDS's costs of litigating in Alaska. The court can think of no reason why it would have to hear testimony from the nearly 50 individuals with knowledge of the negotiations surrounding the connection of the IDS structures to the Kotzebue and Kivalina water and sewer systems. While several of Maniilaq's non-party witnesses could have information pertaining to the performance of the contract, the court cannot conclude, based on the vague record, which party will have the greater witness travel costs. However, because the physical evidence is only accessible in Alaska, the court finds that this factor favors venue in Alaska.

**Availability of Compulsory Process**. Although the federal courts of Alaska and Georgia both have the power to subpoena non-party witnesses, the subpoena power extends outside the district only if the place of service is "within 100 miles of the place specified for the deposition, hearing, trial, production or inspection."[28] IDS has identified one non-party witness, while Maniilaq has identified 47 potential non-party witnesses.

---

[27] *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir.1984) (analyzing this factor in the *forum non conveniens* context);

[28] Fed. R. Civ. P. 45(b)(2)(B).

While it is clear, as noted above, that Maniilaq has likely inflated its list of potential witnesses for purposes of defending the pending motion, it appears to also be true that Maniilaq will be more likely to have a greater need to obtain testimony from non-party witnesses than IDS and, therefore, this factor favors venue in federal court in Alaska, which will have the ability to subpoena Maniilaq's non-party witnesses.[29]

In conclusion, the majority of the § 1404(a) factors favor venue in Alaska, and the court declines therefore to dismiss or transfer this matter to the Middle District of Georgia.

## IV. CONCLUSION

For the reasons stated above, defendant's motion to dismiss or, in the alternative, to transfer venue, is **DENIED**.

DATED at Anchorage, Alaska, this 23rd day of April 2010.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

[29]Many of Maniilaq's non-party witnesses were involved in negotiations with IDS personnel regarding attempts to connect the IDS structures to municipal water and sewer systems. Because IDS's alleged failure to connect its structures to municipal water and sewer forms the heart of this dispute, it is very likely that Maniilaq will require testimony from those witnesses in order to prove its claims. *See* Docket 15-6 at 5-9.